In the District Court of the United States
For The District of South Carolina
BEAUFORT DIVISION

| | |
|---|---|
| Anthony Gambrell, #233879 | Civil Action No. 9:07-1072-RBH-GCK |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| | **OF THE MAGISTRATE JUDGE** |
| A. J. Padula, Warden; M. K. Bell, Associate Warden; M. Price, Major; NFN York, Classification Caseworker; S. Patterson, Disciplinary Hearing Officer (DHO); Officer Jenkins a/k/a John Doe, Correctional Officer; K. Ward, Director of Operations; J. Driggers, Inmate Grievance Coordinator (IGC); A. Hardis, Inmate Grievance Coordinator (IGC); M. White, Inmate Grievance Coordinator (IGC); D. Mitchell, Inmate Grievance Coordinator (IGC); S. Skipper, Inmate Grievance Coordinator (IGC), | |
| Defendants. | |

## I.  INTRODUCTION

The plaintiff, Anthony D. Gambrell ("Plaintiff" or "Gambrell"), proceeding *pro se*, filed this Section 1983 action against the twelve above-captioned defendants, A. J. Padula, Warden ("Warden Padula"), M. K. Bell, Associate Warden ("AW Bell"), M. Price, Major ("Major Price"), NFN York, Classification Caseworker ("Caseworker York"), S. Patterson, Disciplinary Hearing Officer (DHO) ("DHO Patterson"); Officer Jenkins a/k/a John Doe, Correctional Officer ("Officer Jenkins"); K. Ward, Director of Operations ("Director Ward"), J. Driggers, Inmate Grievance Coordinator (IGC) ("IGC Driggers"), A. Hardis, Inmate Grievance Coordinator (IGC) ("IGC Hardis"), M. White, Inmate Grievance Coordinator (IGC) ("IGC White"), D. Mitchell, Inmate Grievance Coordinator (IGC) ("IGC Mitchell"), and S. Skipper, Inmate Grievance Coordinator (IGC) ("IGC Skipper"), alleging that these defendants (the "Defendants") failed to

protect him from two assaults that occurred on May 26, 2006 and September 23, 2006, at which time that the Plaintiff was housed in the Chesterfield South Unit at the Lee Correctional Institution ("Lee CI") of the South Carolina Department of Corrections ("SCDC"). [1]

This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C. The Defendants have filed motions for summary judgment.[1] As these are dispositive motions, this Report and Recommendation is entered for review by the District Court.

## II.  *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se*

---

[1] On July 23, 2007, a motion for summary judgment [21] was filed on behalf of ten of the Defendants: Warden Padula, AW Bell, Major Price, Caseworker York, DHO Patterson, Director Ward, IGC Driggers, IGC Hardis, IGC White, and IGC Skipper. On August 15, 2007, a motion for summary judgment [27] was filed on behalf of Officer Jenkins. Service could not be obtained on IGC Mitchell, who relocated to Bermuda. [13]

complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir.1990).

### III.  BACKGROUND AND PROCEDURAL HISTORY

On April 18, 2007,[2] Plaintiff commenced this action against the Defendants, alleging that they had failed to protect him on two occasions at Lee CI. More specifically, the Plaintiff alleged cruel and unusual punishment and the deprivation of due process stemming from an incident on May 26, 2006 in which the Plaintiff, a resident of Chesterfield Unit, was stabbed and beaten by two other inmates in front of defendant John Doe (subsequently identified as Officer Jenkins). The Plaintiff alleges that Officer Jenkins acted maliciously, intentionally, and with deliberate indifference when he failed to protect the Plaintiff from the assault. The Plaintiff contends he has suffered permanent injury to his left hand, scars from several stab wounds, and mental distress. (Complaint [1] at ¶ 1). The Plaintiff alleges he was placed in lock-up as a result of the incident and was the only inmate involved in the fight who received a disciplinary charge. The Plaintiff states that Major Price intentionally and maliciously ordered the disciplinary charge

---

[2] The Plaintiff has the benefit of the holding of *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the delivery date of his Complaint. *See* Order [7] filed on April 26, 2007.

"in retaliation for Plaintiff's involvement" in the May 26 incident. The Plaintiff alleges that the disciplinary charge caused him restlessness and mental distress. (Complaint [1] at ¶ 2). Furthermore, between May 26 and June 16, 2006, the DHO Patterson conspired with Major Price, Warden Padula, and Caseworker York to provide an excuse to put the Plaintiff on lock-up instead of being processed for an institutional transfer to alleviate the need to keep the Plaintiff in protective custody. On June 16, 2006, DHO Patterson convicted Plaintiff of a disciplinary charge for possession of narcotics, denying the Plaintiff his substantive and procedural due process rights and causing him mental distress and anxiety. (Complaint [1] at ¶ 3).

Between May 26, 2006 and September 21, 2006, the Plaintiff submitted several Request to Staff Member forms to Warden Padula, AW Bell, Major Price and Caseworker York to provide information regarding the May 26 incident, and stating that he feared for his safety at Lee CI and wished to be transferred. The Plaintiff alleges that those Defendants disregarded the risk of harm to him, causing him to be depressed and anxious, and he was ultimately assaulted by some of the same individuals who had previously attacked him, causing additional physical and mental injury. (Complaint [1] at ¶ 4). The Plaintiff further alleges that between May 26 and September 21, 2006, he submitted several grievances complaining that he had warned prison officials of the imminent threat to his safety. The Defendants IGC Driggers, IGC Mitchell, IGC Hardis, IGC White, and IGC Skipper maliciously, callously, and intentionally deprived the Plaintiff due process by not properly or timely processing the Plaintiff's grievances, in order to protect the constitutional violations committed by their co-Defendants. The Defendants' deliberate indifference to the Plaintiff's safety resulted in the Plaintiff being assaulted a second time, resulting in additional physical and mental injury. (Complaint [1] at ¶ 5).

On August 1, 2006, the Plaintiff wrote to Director Ward, complaining that Lee CI officials were deliberately indifferent to the Plaintiff's safety. Director Ward did not provide for the Plaintiff's security, but instead conspired with Warden Padula and Caseworker York to create an alibi for not protecting the Plaintiff. (Complaint [1] at ¶ 6). On August 25, Major Price

told the Plaintiff, in front of other inmates and officers in lock-up, to "stop being a coward" and return to the general population. The Plaintiff was humiliated and embarrassed, and became more depressed. (Complaint [1] at ¶ 7). The Plaintiff alleges he was forced to return to the general population on September 21, 2006 and was threatened with disciplinary charges if he refused to do so. (Complaint [1] at ¶ 8). On September 23, 2006, the Plaintiff was assaulted by four inmates and physically injured. (Complaint [1] at ¶ 9). On September 26, the Plaintiff reported the incident to Major Price, who placed him in protective custody. (Complaint [1] at ¶ 10). The Plaintiff alleges that all of the Defendants acted with willful and deliberate indifference to his right to be protected from assault by other inmates, and he seeks a total of $2.4 Million in compensatory and punitive damages, as well as injunctive and declaratory relief. (Complaint [1] at ¶ 11).

On April 26, 2007, the court issued an order which authorized service of process by the Clerk of Court and collection of the filing fee, and also notified the Defendants of the deadline for filing dispositive motions. Service was accomplished upon all of the Defendants, with the exception of "John Doe," who initially could not be identified, and IGC Mitchell, who had moved to Bermuda. [13] The Defendants filed an answer, and then an amended answer [12; 14], which stated that the latter was not filed on behalf of "John Doe" or IGC Mitchell. Both the answer and the amended answer stated that the action was barred, in whole or in part, by the Prison Litigation Reform Act.[3]

Subsequently, "John Doe" was identified as Officer Jenkins, and the court authorized the issuance of a summons for him. [17; 20] Thereafter, a motion for summary judgment was filed on behalf of the Defendants Warden Padula, AW Bell, Major Price, Caseworker York; DHO Patterson, Director Ward, IGC Driggers, IGC Hardis, IGC White, and IGC Skipper. [21] By order of this Court filed on July 26, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th

---

[3] Answer [12] at ¶ 14; Amended Answer [14] at ¶ 14.

Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. [23] On August 2, 2007, an answer was filed on behalf of Officer Jenkins, and on August 15, a motion for summary judgment was filed on behalf of that defendant. [25; 27] Each of the memoranda in support of the motions for summary judgment stated, in pertinent part:

> In the present case, each of [Plaintiff's] Grievances allege conditions of imprisonment and requests for transfer to another SCDC facility. A review of these grievances reflects that Inmate Gambrell failed to fully exhaust his administrative remedies prior to filing suit in the present case.[4]

These statements, however, were not supported by any evidence or affidavits. Accordingly, the court issued an order filed on August 21, 2007 to request additional information from the Defendants with respect to whether the Plaintiff exhausted his administrative remedies prior to filing this action. [28] Specifically, the court's order required, in pertinent part:

> [T]hat the Defendants file with the court a supplemental brief with respect to this matter, and discuss, and attach thereto: (1) a copy of the SCDC grievance procedure in effect at the time the Plaintiff filed his grievances; (2) copies of all of the Plaintiff's grievances relating to the issues set forth in the complaint; and (3) an affidavit (or affidavits) from the appropriate SCDC personnel which addresses whether or not the Plaintiff has exhausted his administrative remedies through Step 2 of the SCDC grievance system. *See, e.g., Ceasar v. Ozmint*, 2006 WL 1751715, at *6 n. 22 (D.S.C. 2006) (finding that exhaustion is not complete until the plaintiff has received a response to his Step 2 grievance); *cited with approval in Malik v. Sabree*, 2007 WL 781640 at *4 (D.S.C. 2007) (RBH). (Footnote omitted).

In the meantime, the Plaintiff filed his response in opposition to the two motions for summary judgment. [30] The Defendants timely filed additional memoranda, along with affidavits and exhibits, in response to the court's order seeking additional information regarding exhaustion, and in support of their motions for summary judgment. [31-34] After Officer Jenkins' motion was filed, a second *Roseboro* was issued to the Plaintiff. [35] On September 21, 2007, the Plaintiff filed a motion for the appointment of counsel [39], to which the Defendants responded in opposition on October 2, 2007. [41] On October 9, 2007, the Plaintiff filed his response to Officer Jenkins' motion for summary judgment. [43] On October 16, 2007,

---

[4] *See* [21] at p. 6 *and* [27] at p. 6.

the Defendants submitted a supplemental memorandum in response to certain other issues raised by the Plaintiff in his motion for appointment of counsel.  [44; 45]  As the issues have been joined, this matter is now ripe for review by the undersigned United States Magistrate Judge.

## IV.  DISCUSSION

### A.  Whether Plaintiff Exhausted his Administrative Remedies Prior to Filing this Action

As a threshold matter, the Plaintiff has failed to exhaust the administrative remedies available at Lee CI, and thus it is recommended that this action be dismissed without prejudice. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a Section 1983 action concerning his confinement.  42 U.S.C. § 1997e(a). The revised PLRA states, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

It is well established that the exhaustion requirement is mandatory, *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and that the requirement "applies to all inmate suits about prison life," whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *see also  Jones v. Bock*, – U.S. –, 127 S.Ct. 910, 166 L.Ed.2d 798, 2007 WL 135890, *8 (Jan. 22, 2007), *and Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001) (in a unanimous decision, the Supreme Court held that the PLRA requires administrative exhaustion even if grievance procedure does not allow monetary damages and prisoner seeks only monetary damages, so long as grievance tribunal has authority to take some responsive action).

The Supreme Court has stressed that exhaustion must take place prior to the commencement of the civil action in order to further the efficient administration of justice:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to

> address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy. *Porter,* 534 U.S. at 524-525.

The lack of exhaustion of administrative remedies is, generally, considered an affirmative defense and not a jurisdictional infirmity in the Fourth Judicial Circuit. *Anderson v. XYZ Correctional Health Services*, 407 F.3d at 683.

As mentioned above, the Plaintiff claims that Officer Jenkins did not take reasonable steps to protect him from other inmates housed in his unit at the Lee CI on May 26, 2006 when he was involved in an altercation with other inmates that resulted in injury. (See Complaint [1] at ¶ 1). In addition, he alleges that on or about September 23, 2006, he was "forced to return to the general population" by SCDC, noting that "all other Defendants except [Officer Jenkins] contributed in some form or fashion." (See Complaint [1] at ¶ 8). The Plaintiff was transferred to Perry CI on October 19, 2006.

The Plaintiff stated in his complaint that he filed a grievance (Lee CI #1300-06, and others) concerning the claims he raised in his complaint, but he did not receive any final answer or determination. (Complaint [1] at p. 2). The court has engaged in a close review of the grievances submitted by the Defendants pursuant to its Order of August 21, 2007. [28] There were eleven (11) grievances filed between May 26, 2006 and September 23, 2006; the topics of the grievances range from a complaint of food being served at an improper temperature, to requests for additional recreation time, to requests for reprimands of certain staff of Lee CI, to complaints that he had not received responses to other grievances, to requests for a transfer from Lee CI.

On June 18, 2006, the Plaintiff filed a Step I grievance to appeal his conviction of the charge of "use of possession of narcotics or unauthorized drugs" (Lee CI 1288-06). (*See*

Affidavit of Catherine James ("James Affidavit") at ¶ 7; *and* Exhibit B to James Affidavit).[5]  The grievance was processed and accepted by Warden Padula on August 7, 2006, and the Plaintiff's conviction was overturned, which relieved him of any sanctions imposed by the conviction.  (*See* James Affidavit at ¶ 7; *and* Exhibit B to James Affidavit).

Also on June 18, 2006, the Plaintiff filed a Step I grievance which was similar to the first grievance filed in that it sought to appeal his conviction of the charge of "use of possession of narcotics or unauthorized drugs" (Lee CI 1298-06).  (*See* James Affidavit at ¶ 8; *and* Exhibit C to James Affidavit).  Because it was identical to the first grievance, it was returned to the Plaintiff as unprocessed due, pursuant to SCDC Policy #GA-01.12, Section 13.1.  (*See* James Affidavit at ¶ 8; *and* Exhibit C to James Affidavit).

On June 19, 2006, the Plaintiff filed a Step I grievance to request a transfer from Lee CI (Lee CI 1287-06), along with a Request to Staff Member dated June 1, 2006, which also requested a transfer from Lee CI.[6]  This (third) grievance was processed and investigated, and returned to the Plaintiff on March 20, 2007 with the explanation:  "IGC reviewed all appropriate documentation.  See Warden's response."  (*See* James Affidavit at ¶ 9; *and* Exhibit D to James Affidavit).  The Defendants state, first, that the Plaintiff did not appeal the Warden's response by filing a Step II appeal with the Division Director of Operations in accordance with SCDC Policy #GA-01.12, Section 13.4.  Second, the Defendants argue that the issue raised in this grievance became moot when the Plaintiff was transferred to Perry Correctional Institution ("Perry CI") on October 19, 2006.  (*See* James Affidavit at ¶ 9 *and* Exhibit D to James Affidavit).

---

[5] Catherine James, a Grievance Coordinator at Lee CI, was assigned to review, monitor, and respond to inmate grievances during the times relevant to the present action, and has provided an affidavit to the court.  [32-2]

[6] The Request to Staff Member had been denied by Warden Padula on June 8, 2006, with an explanation that "If the [Internal Classification Committee] validates your need [for a transfer] and recommends transfer, it must be approved by State Classification at Headquarters.  If approved, they determine when and where you will transfer."  (See Exhibit D to James Affidavit).

On June 20, 2006, the Plaintiff filed a Step I grievance requesting that Caseworker York be reprimanded for unprofessional conduct (Lee CI-1300-06). This (fourth) grievance was returned to the Plaintiff unprocessed on July 17, 2006 because the Plaintiff had failed to seek an informal resolution prior to filing the Step I grievance, as required by SCDC Policy # GA-01-12, Section 13.1. The Plaintiff failed to correct this error within the required five days, and the grievance was deemed abandoned for failure to follow the Grievance Committee's recommendations in accordance with SCDC Policy #GA-01.12, Section 16.3. (*See* James Affidavit at ¶ 10 *and* Exhibit E to James Affidavit).

On July 5, 2006, the Plaintiff filed a Step I grievance requesting that Caseworker York be reprimanded for unprofessional conduct (Lee CI-1435-06). This (fifth) grievance was returned to the Plaintiff unprocessed, pursuant to SCDC Policy # GA-01.12, Section 13.1, because it was identical to the earlier grievance filed regarding Caseworker York. (*See* James Affidavit at ¶ 11 *and* Exhibit F to James Affidavit).

On July 6, 2006, the Plaintiff filed a Step I grievance requesting additional recreation time while assigned to lock-up at Lee CI's Special Management Unit. (Lee CI 1436-06). This (sixth) grievance was returned to Plaintiff on April 17, 2007, unprocessed, due to mootness as the Plaintiff was transferred to Perry CI on October 19, 2006, before a formal resolution could be reached. (*See* James Affidavit at ¶ 12 *and* Exhibit G to James Affidavit).

On July 31, 2006, the Plaintiff filed a Step I grievance complaining that he had not received a response to several prior grievances (Lee CI 1722-06). This (seventh) grievance was returned to Plaintiff unprocessed on August 4, 2006 for failure to identify the grievances at issue. The Plaintiff failed to correct this error within five days, and the grievance was abandoned in accordance with SCDC Policy # GA-01.12, Section 16.3. (*See* James Affidavit at ¶ 13 *and* Exhibit H to James Affidavit).

On August 14, 2006, the Plaintiff filed a Step I grievance complaining that he had not received a response to several prior Request to Staff forms seeking a transfer from Lee CI (Lee

CI 1862-06).  This (eighth) grievance was returned to Plaintiff unprocessed on March 20, 2007, in accordance with SCDC Policy #GA-01.12, Section 13, because it was a duplicate of his June 19, 2006 Step I grievance which had requested a transfer from Lee CI (Lee CI 1287-06).  (*See* James Affidavit at ¶ 14 *and* Exhibit I to James Affidavit).

On August 21, 2006, the Plaintiff filed a Step I grievance complaining that his hot breakfast was served cold (Lee CI 1967-06).  This (ninth) grievance was returned to Plaintiff unprocessed on April 17, 2007, due to mootness because the Plaintiff was transferred to Perry CI before a formal resolution could be reached.  (*See* James Affidavit at ¶ 15 *and* Exhibit J to James Affidavit).

Also on August 21, 2006, the Plaintiff filed a Step I grievance seeking a transfer from Lee CI (Lee CI 1966-06).  This (tenth) grievance was returned to Plaintiff unprocessed on March 20, 2007, pursuant to SCDC Policy # GA-01.12, Section 13, because it was a duplicate of his June 19, 2006 Step I grievance which had requested a transfer from Lee CI (Lee CI 1287-06). (*See* James Affidavit at ¶ 16 *and* Exhibit K to James Affidavit).

On September 17, 2006, the Plaintiff filed a Step I grievance appealing the decision of a disciplinary hearing officer at a disciplinary hearing held on September 5, 2006, convicting the Plaintiff for refusal to obey orders (Lee CI 2155-06).  This (eleventh) grievance was processed and denied on October 27, 2006, but the Plaintiff did not appeal the Warden's response by filing a Step II appeal with the Division Director of Operations in accordance with SCDC Policy #GA-01.12, Section 13.4.  (*See* James Affidavit at ¶ 17 *and* Exhibit L to James Affidavit).

To summarize, the Plaintiff filed eleven grievances during the relevant time period from May 26, 2006 and September 23, 2006.  As mentioned earlier, the Plaintiff was successful in his first grievance (Lee CI 1288-06).  Of the ten other grievances, four were identical to other grievances which were filed by the Plaintiff, and therefore were returned to the Plaintiff unprocessed (Lee CI 1298-06; Lee CI 1435-06; Lee CI 1862-06; and Lee 1966-06).  Of the six remaining grievances, two were deemed abandoned because the Plaintiff failed to correct errors

within 5 days' time, as instructed by Lee CI grievance personnel and SCDC policy (Lee CI 1300-06 and Lee CI 1722-06).

This leaves the court with four remaining grievances. Of these, one grievance (Lee CI 2155-06, filed September 17, 2006) was denied by the Warden on October 27, 2006, but the Plaintiff did not appeal the Warden's response by filing a Step II appeal with the Division Director of Operations in accordance with SCDC policy.[7] Therefore, the Plaintiff did not properly exhaust this grievance.

There are three grievances remaining: Lee CI 1287-06, filed on June 19, 2006, requesting a transfer from Lee CI to another facility; Lee CI 1436-06, filed on July 6, 2006, requesting additional recreation time; and Lee CI 1967-06, filed on August 21, 2006 complaining about the temperature of his breakfast. The grievance requesting a transfer was answered on March 20, 2007. (*See* Exhibit D to James Affidavit). The grievances requesting additional recreation time and regarding breakfast both were returned, unprocessed, to the Plaintiff on April 17, 2007 on the grounds that they were moot because of the Plaintiff's transfer to Perry CI on October 18, 2006. (*See* Exhibits D, G, and J to James Affidavit).

The Defendants offer no explanation for the reasons these grievances were returned to the Plaintiff some eight or nine months after they were filed. The Defendants contend:

> [P]laintiff's records fail to reflect a proper prisoner grievance or appeal completed in accordance with the SCDC Policies and Procedures prior to filing suit in the present case. The documents attached to Ms. Catherine James' Affidavit verify that the Plaintiff failed to comply with SCDC procedures when filing [g]rievances or failed to properly file a Step II appeal with the Division Director of Operations before being suit in the present court. Therefore, under the dictates of the PLRA, this Court should find that the Plaintiff's Complaint is, on its face, filed prematurely and is not ripe before the present Court.

With respect to the three grievances which were returned eight or nine months after they were filed, the court is of the opinion that these are exhausted. SCDC policy provides that "If, at the institutional level, the response to the grievance exceeds the established time limits, <u>the</u>

---

[7] This grievance appealed the decision of a disciplinary hearing officer at a disciplinary hearing held on September 5, 2006, convicting the Plaintiff of refusing to obey orders.

grievance will automatically proceed to the next level of appeal. *See* Section 13.6 of SCDC Policy issued 1-1-2006 (emphasis added). Accordingly, when a Warden fails to respond to an inmate's Step 1 grievance, the grievance will be exhausted after the time periods for both steps to be completed have expired (approximately 114 days). *See, e.g., Trappier v. Mayes*, 2007 WL 2572262 at *3 (D.S.C. August 31, 2007); *Malik v. Sabree*, 2007 WL 781640 at *4 (March 13, 2007). After approximately 114 days have passed, the inmate will have exhausted "such administrative remedies as are available." *Trappier, citing* 42 U.S.C. § 1997e(a).

Thus, three grievances filed by the Plaintiff (Lee CI 1287-06, filed on June 19, 2006, requesting a transfer from Lee CI to another facility; Lee CI 1436-06, filed on July 6, 2006, requesting additional recreation time; and Lee CI 1967-06, filed on August 21, 2006 complaining about the temperature of his breakfast) are exhausted. However, the matters complained of in these grievances are not the matters pled in the Complaint. As mentioned above, the Plaintiff has filed this action alleging a failure to protect. Because the Plaintiff did not file a grievance regarding the matters in the Complaint, it is recommended that this action be dismissed pursuant to the PLRA.[8]

---

[8] In light of the Fourth Circuit's opinion in *Green v. Young*, 454 F.3d 405 (4th Cir. 2006), the undersigned notes that dismissal under PLRA for failure to exhaust administrative remedies does not count as a "strike" for purposes of the "three strikes" rule. Therefore, the court does not recommend that a "strike" be imposed in the above-captioned case.

## **RECOMMENDATION**

Based upon the foregoing, it is recommended that the **Defendants' Motions for Summary Judgment [21 and 27] should be granted, and that this case be dismissed, without prejudice.** The Plaintiff's motion to appoint counsel **[39] is moot.**

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

October 23, 2007

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk

United States District Court

P.O. Box 835

Charleston, South Carolina 29402

Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).